Good morning, Your Honors. Brendan Dolan for Appellant Oracle, and with me are my co-counsel Lucky Mines, Brittany Sachs, and Lowell Ritter. The standard, Your Honors, on a motion to compel arbitration simply stated, it's a two-step process. Number one, determine if there is a valid existing arbitration agreement. And step two, determine if the dispute at issue is within the scope of that valid existing arbitration agreement. The source of this simply stated two-step process is clear in Sections 2 and 4 of the Federal Arbitration Act, and it's recited repeatedly throughout the extensive arbitration, Federal Arbitration Act jurisprudence before the Supreme Court and in the Ninth Circuit. The Court here committed error by failing to carry out the first step in that process and instead jumping immediately to the second step in the process. The District Court expressly eschewed ruling on whether there was an existing valid agreement to arbitrate. It held that in jumping to the second step in the process, disregarding the first step, it held that the question of whether there was an existing, in effect, whether there was an existing valid agreement to arbitrate was a determination to be made by the arbitrator. And in the words of a couple of different decisions that we cite in our papers, that was a case of putting the cart before the horse. One cannot, a district court cannot determine if a matter is appropriately delegated to an arbitrator without first having an appreciation and having ruled on the first step of the process regarding what is the underlying agreement under which the question of delegation arises. And in this case, the Court never made that decision. It kind of said, well, there are two agreements, there's a dispute between the parties, I can't decide, I'm going to throw up my hands and I'm going to kick it to the arbitrator. And it is in that action that the Court failed to carry out its obligation under section 2, section 4 of the Federal Arbitration Act. And the fact that there was a previous agreement, this agreement number 1, a previous agreement to arbitrate, is really almost irrelevant in this circumstance. Why is that irrelevant? I didn't say completely irrelevant. Right. I said almost. What are you saying? What I'm saying is that the Court was obligated to determine in the first instance, regardless of whether there were two agreements, regardless of whether there could have been five agreements, the Court, or there could have been one agreement, as in a case like Sanford v. Member Works, where there was a question about whether it was even binding on the parties, whether the parties had entered an agreement, the Court had to, in the first instance, determine if there was an agreement to arbitrate. Tell the Court that? Was this argument raised to the district court that it was the Court's obligation to determine in the first instance the existence of an agreement to arbitrate? Is that issue raised? It was raised, Your Honor. It may not have been articulated with those precise words. It was articulated repeatedly in our briefing. It was discussed at the hearing, and in our we furnished further excerpts of the record in connection with our reply briefing that identified some of the places in the briefing at which the argument was made. So tell me in the record where you most clearly made the argument to the district court that it was the district court's obligation to determine the existence of an agreement to arbitrate. Where may we look in the record to see that? Well, I think any place we cited section 4 and 2. Give me your most clear instruction or your most clear reference to the district court that you were asking the district court to determine the existence of an agreement to arbitrate. I believe it is reflected probably most clearly, Your Honor, in the further excerpts of the record, pages, if I remember correctly, I believe about pages 6 through 16. And I believe that it's reflected in the further. Is it that many pages to tell the district court that you were asking the district court to determine the existence of an agreement to arbitrate? No, Your Honor. It was the reason there are that many pages cited in what I just told you are twofold. First, it was raised repeatedly, number one, and I cite a number of the places that it was raised. And some of the pages that I cite reflect briefing or statements by appellees' counsel that reflect awareness and argument on that very issue. Okay. So I'm at the further excerpts of record, page 6. And that's talking about whether or not the class waiver in agreement number two precludes delegation to an arbitrator and whether or not agreement number two constitutes an ovation. Is that what you're saying put the district court on notice as to whether or not there might be a need to determine the existence of an agreement to arbitrate? That's one of the places. Your Honor, I, as I said, I don't know that I precisely worded it the way that you asked in the question. But do you think it's fair to charge error to the district court for failing to do something that wasn't clearly delineated to the district court that the parties wanted it to determine? They do that to me all the time. And we don't like it. Right. Well, Your Honor, to be fair to the district court, I neglected also to request to reserve 4 minutes for rebuttal. I apologize. I didn't do that. The – in fairness to the district court, the body of law regarding the question of compelling arbitration under the Federal Arbitration Act is a quagmire. I think the oral argument in this matter that the district court reflects, these are – although the standard is simply stated, these are difficult issues to discern. I agree. I agree. But I think in fairness, the district court should be apprised of what the issues are that the parties are asking the district court to determine in this quagmire of case law. We clearly articulated, Your Honor, that agreement number one had ceased to exist. We clearly articulated that the standard for the compelled arbitration was this two-step standard that I talked about. It's cited in the cases. I think we cite Van Dusen. I think we cite Chiron for that proposition in both our – in our district court briefing and our briefing here. And, you know, the district court, you know, has an obligation, respectfully I would say, it's got to apply the right law. And different people – But the parties have an obligation as well to tee up the issues for the district court. And I see it as us all working together to try to come to the correct resolution. So the parties have a part to play in telling the district court what issues it seeks to have resolved and putting forth the precedent or the cases that the parties want the district court to consider. And, of course, the district court will do its own independent research, but it doesn't do it separate and apart from the issues that have been framed by the parties. I completely agree, Your Honor. It is a cooperative effort, and it's the responsibility and duty of counsel to inform the court. I believe that we did. I believe that we articulated the standard under Section 4 and Section 2 of the Federal Arbitration Act, and we cited cases like Granite Rock, like Van Dusen, like Chiron, that articulate the standard. The Court's focus became, based on its own decision, the Court's focus was brought to the delegation question. And we didn't believe – so we argued the delegation question before the district court, but we certainly didn't waive, and the standard for waiver on appeal was certainly not met in this circumstance. We certainly didn't waive the argument that this was a situation where the existence and validity of the agreement under which arbitration was sought to be compelled was conceded. This was – and that's what takes this case outside of the Mohammed v. Uber case, the Brennan case, the Oracle v. Myriad case, the Momot case. Those cases all involve the issue of whether the delegation, the second prong of the test, if you will. We certainly were not conceding below that focus on the second prong was appropriate. But that's where the focus ended up being. Mr. Dolan, there's a man-bites-dog aspect to this case. Usually you're the – the big corporations are the one who's imposing arbitration on people. You're the one who end up paying jams for both sides of the – because the plaintiff doesn't want to be there. And you're the ones who make these class actions disappear into arbitration. Don't you see the irony here? I don't know if I'd go as far as to call it irony. I think that if you look at the Federal Arbitration Act jurisprudence, Your Honor, sides, parties, the nature of parties, whether it's a corporation or an individual, depending on the context in which the issue arises, they can end up on different sides of this. But you've got all the power. I mean, you're the one who sends a – here's your new sales agreement. You have to sign it today. And you're – when the corporation has all the power, doesn't that enter into our analysis a little bit here? I don't think it enters into the analysis at the juncture that we're at. That question might end up entering into the matter. And, Your Honor, I'm sorry, I'm down to three and a half minutes, and I was trying to reserve four. It doesn't enter into the analysis on prong one. It may enter into the analysis on prong two. And that matter, that prong two, we weren't at a stage in this case where prong two was appropriately addressed. Let me just ask you this final question. Do you agree that the parties had an agreement to arbitrate, but the issue is just which agreement controls? Do you agree with that statement? That's – I think that I would say that that's one way of looking at it. Is that your way? Is that your position? If one of us asks a question that is not one way to look at it, tell us about that. Right. Is that your position? Do you accept that premise? I would phrase, I can't accept it – I'm reluctant to accept it as you state. I'm sorry, Judge Schroeder, I'm being too much of a lawyer up here, I know. I apologize. The question under the FAA is, is there a valid and existing agreement to arbitrate? In this case, because there are two agreements, the question becomes, are there – the valid and existing agreements are arbitrated under the FAA. So are you saying that there is no valid – I'm trying to pin down what your position is here, because in the district court it appeared to me that you took the position that the second agreement was a novation, which voided the first agreement, but there was nevertheless an agreement. But you seem to be saying here now that there is a question whether there is any agreement at all. And to me, that's a different issue than you raised in the district court. I'm not saying that there's not an agreement at all. It is our position, it is Oracle's position that agreement number two is the enforceable valid and existing agreement to arbitrate. What I'm saying is not that there's no agreement. I'm saying the Court never made a decision regarding whether there was an agreement or not. It never determined, is there a valid and existing agreement to arbitrate? And in that – in that – in the absence of that piece of analysis, the Court unfortunately was mistaken in the conclusion that it reached. I think I understand your position. I'll come back and talk to you about it in a moment. Thank you, Your Honor. Thank you, counsel. We'll concede it's one way to look at it. Good morning, Your Honors. My name is Michael Palmer. I'm here with Danielle Fischetti and Meredith Firetalk, my colleagues. We represent the appellee, Marcella Johnson. There is no dispute, as you just heard, that the parties agreed that Johnson's employment claims would be resolved through arbitration. Well, I don't know about that. That's one way to look at it. But opposing counsel appears to be saying that the district court failed to determine the existence of an agreement to arbitrate, and therefore, we need to send it back for that preliminary determination to be made. What's your response to that? Well, Your Honor, I'm glad you asked. First of all, I want to point to the further excerpts of the record that oppose opposing counsel was looking at there. If you could turn to, it's actually FER3s, the court said at the top, and the beginning of the paragraph is not included, but this is the court speaking. There's no question that there's an arbitration agreement. The question is, which of the two apply? That was the court. The court found that there was an arbitration agreement. The threshold determination was decided. But defendants actually were never challenging the threshold issue. Defendants never came in and said there's no arbitration agreement. No. And you get to decide this case, and all the plaintiffs get punitive damages and everything else. I will tell you, Your Honor, I would have loved for them to have said that. I, if we want to go back now, and if they want to put it on the record there's no arbitration agreement, that would be just fine. In fact, in the record, they repeatedly referred to this as a gateway issue. A gateway issue regarding which of the two agreements governs. This is what the court said. Okay, a gateway issue. Well then, why do I normally decide that as a court except if it's been delegated? Here, it was delegated. It was delegated because the jams rules were incorporated in the arbitration agreement. And in fact, the case law is so consistent on this, they really had no basis to argue to the contrary, that there was some kind of dispute about actually what had been agreed to go to arbitration. So. So the district court said, ''Jams Employment Rule 11b gives the arbitrator authority to decide arbitrability disputes regarding the agreement under which the arbitration is sought. Plaintiffs submitted her arbitration demand to jams under Agreement 1. The fact that defendant will introduce a second arbitration agreement to argue the first is invalid because it's superseded Agreement Number 1 means the arbitrator will decide whether the subsequent agreement rendered the first one invalid. And that those kinds of disputes are clearly and unmistakably delegated to the arbitrator under jams Employment 11b. Is that and that you think that's correct? I think that is correct. I think that the Federal courts that have looked at this, Belknap, which was the 10th Circuit, Cooper, the 5th Circuit, simply wireless, the 4th Circuit. And for that matter, an unpublished case by the 9th Circuit, the Wynn Resorts case, have all said that the incorporation of jams rules results in the delegation of arbitrability issues that basically resolves that gateway question, who decides the gateway question. And there's no dispute, in your position, there's no dispute as to whether or not there was a delegation to jams or what is your point? No, I believe, Your Honor, I believe that defendants did dispute that and do continue to dispute that. They have not been able to provide a very clear argument or cite to circuit opinions in which courts have found to the contrary, but they cite to one case, I believe, and with a district court case, let me just check which case that was. They cite to a district court case on one issue here saying that because, but we dispute, that's the Tompkins versus 23andMe, but we do not believe that the court should follow that district court opinion because that case involved, one, involved an incorporation of all future versions of the AAA rules, again, it was AAA, not jams, but we acknowledge that they're very similar, and two, there was an argument by the plaintiffs in that case, the individuals who sought to bring a case, that they were unsophisticated consumers and thus that they didn't know what they were agreeing to. There's obviously no dispute that Oracle, which is a very large company, which wrote these, the document, knew what it was agreeing to, and Johnson doesn't raise any question about what she agreed to. She's the one who's actually seeking to go to arbitration and have this issue resolved. I think that Your Honor's raised an interesting point before about the dog catching the car, I believe it was, or something along those lines. Man biting a dog. Man biting a dog, dog catching a car. No, they're similar, they're similar. The point is, is, I mean, Oracle has to face the facts that this is, these are, there were agreements, these are the documents that they wrote and they must be required to actually abide by it. They keep on trying to fight this out in courts, which is so ironic considering their intense effort to actually have every issue resolved in arbitration. So one issue that defendants have argued is that the fact that Johnson filed her arbitration demand as a putative class action plays into the analysis here. That's incorrect. At this stage it does not, because first off, if Oracle, let me break it down into two arguments that Oracle makes. Oracle argues that because Agreement 2, which is the one that is part of the 100-page comp plan, because it has a class waiver, a court will need to decide whether that waiver is unenforceable before even it being sent to arbitration. This is incorrect. Johnson did not submit this matter to arbitration under Agreement 2. She's not challenging the enforceability of the class action waiver in Agreement 2. If in deciding the arbitrability question the arbitrator finds that Agreement 1 applies, as we believe the arbitrator will, the enforceability of the class waiver in Agreement 2 is irrelevant. On the other hand, if the arbitrator finds that Agreement 2 apply, then Johnson will basically have to decide whether she's either going to proceed on an individual basis or at that point decide to challenge the class waiver. Oracle also argues that a court must decide whether class arbitration is available under Agreement 1. It's also wrong. Again, it is premature because the availability of class arbitration under Agreement 1 is not before the court or, for that matter, before the arbitrator yet because they still have to decide which of the two agreements needs, actually governs here. Defendants argue that Agreement 2 governs. We argue that Agreement 1 governs. Once the arbitrator decides that, then it will be decided whether under Agreement 1 a class arbitration can proceed. Well, that really is the issue, isn't it, whether the district court was supposed to decide whether 1 or 2 applies or not? The issue of whether — defendants argue that it should be — that the district court should decide whether 1 or 2 applies. We say that under the incorporation — But that's the question before us as to whether or not the district court erred in saying that that's for the arbitrator. Right. So let me restate what I was just saying. I was saying that I understand the oracle's argument — oracle to make an argument that under Agreement 1, basically, a court will have to decide whether class arbitration is appropriate. Because as Your Honor says, that's not — we're not at that point yet. We're not at the point of saying we're under Agreement 1. It's premature, first off. Second off, we would argue that under the plurality decision, Greentree v. Basel, that this is a procedural question and — which should be decided by the arbitrator. Now, the fact is, though, that because arbitrability issues have been delegated to the arbitrator, we don't even really need to get to the Basel point because under jammed rules, the arbitrator will make the determination of whether under Agreement 1, class arbitration can proceed. But that's because of the delegation. That's because of the delegation. I mean, it's not — it's not nonsensical to say that under PrimaPaint and AT&T and all these cases that the question of which contract is — which arbitrability provision is the one that goes to — that governs what goes to the arbitrator is appropriate. It's a question that the district court could answer. Well, we would — it could answer it had it not been delegated. I would — Yeah, that's what — that's — that was my question. It's — Correct, Your Honor. It all depends on the delegation. That's exactly right, Your Honor. Because it was delegated, it goes to the arbitrator. The arbitrator then decides which of the two provisions applies. Then if the arbitrator finds that provision 1 applies, then there's a question of whether class arbitration is permitted. And that, again, is an issue that — that is for the arbitrator, whether it's because it's a procedural issue under the Basel view or whether it's just because it's a gateway issue that has been delegated to the arbitrator because of JAMS rules, which is what the Wells-Fargo v. Sappington case, the Second Circuit. There's a recent JPAY v. Coppell case, the Eleventh Circuit. And then there's a Dish Network v. Wray case, Tenth Circuit. All of these came down just within the last six months or so, all of which held that this is — this is an issue that can be delegated to the arbitrator simply by the incorporation of the rules of the arbitration forum. And both of these contracts had that delegation. The exact same clause. The clause — the clause — there is no dispute that the same delegation provision is in both. The analysis of which arbitration provision governs is going to be a fact-intensive inquiry. It's going to look at — the arbitrator's going to look at whether the parties had the requisite intent for novation, whether modification requirements set forth in the first provision were satisfied by the second provision, whether Oracle should be stopped from arguing that Agreement 2 is a governing provision based on its past actions of presenting Agreement 1 as the operative agreement, whether it's an unconscionability. There's a number of issues that are before the arbitrator. And there has been discovery in arbitration, and there's been briefing before the arbitrator already on this issue. As, you know, all the gateway issues were delegated by the parties to the arbitrator, this process should continue. It's required under the parties' agreement, and it's consistent with the liberal Federal policy favoring arbitration. Thank you, Your Honor. Thank you, counsel. I have a minute and eight seconds to make four points, so I apologize if I'm talking fast. First of all, Judge Rawlinson asked a question about where in the record we raise the issue about the Court having to decide which agreement was the valid enforceable agreement. In addition to the cites I gave you before, I would refer you to page 2 of the further excerpts of the record. The ---- But what's your response to opposing counsel's pointing to the record where the district court said that there was undeniably an agreement to arbitrate? Doesn't that take away your argument that the district court failed to make that finding? It didn't make a finding that there was a valid and existing agreement to arbitrate. It is not sufficient under the Federal Arbitration Act to throw up your hands and say, one of these two must be applicable. The FAA does not use the plural in its reference to agreement to arbitrate. The court said there's no question that there is an arbitration agreement. That does not satisfy the requirement under the Federal Arbitration Act or under the cases, Granite Rock, Chiron, et cetera, on down the line, that it find a valid existing agreement to arbitrate. That's the wrong way to look at it. That's the way I look at it, Your Honor, and that's the way my client looks at it. Do you agree with counsel that that's a very heavily fact-dependent question if it comes down to that? It may be, and the Federal Arbitration Act actually provides for a trial of that factual question if it's a heavily fact-specific issue. And in the Sanford v. Member Works case, the court found that the court committed error in not actually conducting a trial on that. It kicked it. And so whether or not there is an agreement. Whether or not there is an agreement, yes. But it's not inconceivable, Your Honor, that in this case, based on the position of the parties, that the judge, looking at this issue, might reach a conclusion different than what she reached in her previous order regarding there must be an agreement to arbitrate. Because to the extent that we contend that there is no agreement with respect to number one, they contend, no less vociferously, that there is no agreement in connection with number two. So it is not. I have to respectfully. Somebody has to win. Well, there may not. It's not necessarily a binary question here. And there has to be a determination. Is there a valid agreement to arbitrate? It's not just saying it's illogical. It sounds simple, but it's illogical to say they say one agreement applies, you say this agreement applies, so somebody must be right. Unfortunately, I don't think you can necessarily reach that conclusion and make that argument and maintain a logical stance on it. Second point I wanted to make, 11B of the JAMS rules completely disregards the class action rules that JAMS applies in this circumstance. JAMS class action rule 1B expressly says that the class action rules apply where a party seeks to bring an action, an arbitration as a class action. Counsel said it didn't matter that this was a demand for class arbitration. It does matter, and it's dispositive on the issue of the delegation, because there cannot, in view of the class action arbitration rules, be found to be a clear and unmistakable delegation to the arbitrator. But, counsel, don't the JAMS rules also say that the existence of the agreement is submitted to the arbitrator? That's what 11B says, but 11B is subordinate to the JAMS class action rules, which say that JAMS cannot even administer, it cannot even administer under Rule 1A a demand for class arbitration when the underlying agreement contains a class waiver. The agreement that we contend is the underlying agreement here, that through what I might characterize as gamesmanship, the other side steps, has a class  waiver. JAMS had no business in the first instance even beginning the administration of this, of the arbitration in this matter. All right. Thank you, counsel. Thank you very much, Your Honor. Thank you to both counsel for your helpful arguments in this challenging case. The case just argued is submitted for decision by the Court. The final case on calendar for argument today is National Labor Relations Board v. International Association of Bridge Structural, Ornamental, and Reinforcing Ironworkers, Local 229. Thank you.
judges: Schroeder, Rawlinson, Lasnik